1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7

8    JESSIE L.,                          Case No.  20-cv-9305-DMR

              Plaintiff,
9
                                         **ORDER RE CROSS-MOTIONS FOR**
10      v.                               **SUMMARY JUDGMENT**

11   KILOLO KIJAKAZI,                     Re: Dkt. Nos. 22, 26

              Defendant.
12

13          Plaintiff Jessie L. moves for summary judgment to reverse the final administrative decision

14   of the Commissioner of the Social Security Administration ("Commissioner"), which found

15   Plaintiff not disabled and therefore denied his application for benefits under the Social Security

16   Act, 42 U.S.C. § 401 *et seq*.  The Commissioner cross-moves to affirm.  For the reasons stated

17   below, the court grants in part and denies in part Plaintiff's motion for summary judgment, denies

18   the Commissioner's cross-motion for summary judgment, and remands this case for further

19   proceedings.

20   **I.     PROCEDURAL HISTORY**

21          Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on

22   November 8, 2017, alleging disability beginning on July 18, 2015.  Administrative Record

23   ("A.R.") 348-70.  His application was initially denied on March 22, 2018, and again on

24   reconsideration on June 22, 2018.  A.R. 145-50, 161-66.  An Administrative Law Judge ("ALJ")

25   held two hearings, the first on August 8, 2019, at which Plaintiff failed to appear, and during

26   which medical expert ("ME"), Dr. David Peterson, and a vocational expert ("VE") testified.  A.R.

27   47-66.  Plaintiff appeared and testified at the second hearing on December 17, 2019, A.R. 67-90,

28   and the ALJ issued an unfavorable decision on April 8, 2020.  A.R. 24-40.

United States District Court
Northern District of California

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

## II.    ISSUES FOR REVIEW

1.    Did the ALJ err in weighing the medical opinions of:

    a.    therapist Sarah Ulloa;

    b.    state agency psychological consultants, Drs. Paxton and Constantin; and

    c.    medical expert, Dr. Peterson?

2.    Did the ALJ err in his Paragraph B determination regarding Plaintiff's mental impairments?

3.    Did the ALJ err in failing to follow the internal policy manual governing the testimony of the medical expert?

4.    Did the ALJ err in determining that Plaintiff's substance abuse was material to the determination of his disability when he:

    a.    failed to consider the opinion of examining psychologist, Dr. Scott Lines; and

    b.    failed to consider that Plaintiff's periods of improvement occurred during incarceration?

5.    Did the ALJ err in failing to develop the record regarding Plaintiff's cognitive impairments?

6.    Did the ALJ err in evaluating Plaintiff's symptom testimony regarding his mental impairments?

7.    Did the ALJ err in evaluating Plaintiff's congestive heart failure when he:

    a.    failed to find it was a severe impairment at step two; and

    b.    discounted Plaintiff's related symptom testimony?

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180

United States District Court
Northern District of California

F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a mere scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).  When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV.   DISCUSSION

### A.   Standards for Evaluating Cases Involving Drug and Alcohol Addiction

Because this case involves substance abuse, which the Social Security Administration ("SSA") refers to as drug and alcohol addiction ("DAA"), the ALJ here was required to "apply the appropriate [five-step] sequential evaluation process twice."  Social Security Ruling ("SSR") 13-2p, 2013 WL 621536, at *6 (Feb. 20, 2013);[1] *accord Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) (interpreting 20 C.F.R. §§ 404.1535, 416.935).  The two-step process is necessary because "[a] claimant cannot receive disability benefits 'if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.' " *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (quoting 42 U.S.C. § 423(d)(2)(C)).

During the first "round" or "stage" ("round one"), the "ALJ conducts the five-step inquiry

---

[1] Social Security Ruling 13-2p is binding on ALJs.  *See Heckler v. Edwards*, 465 U.S. 870, 873 n. 3 (1984) (Social Security Rulings are binding on all SSA decisionmakers); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (holding that Social Security Rulings "do not carry the 'force of law,' but they are binding on ALJs nonetheless").

without separating out the impact of [DAA]," to determine whether the claimant is disabled. *Bustamante*, 262 F.3d at 955; *see also* SSR 13-2p, 2013 WL 621536, at *6. If, considering all of the claimant's medically determinable impairments, the ALJ determines during round one that the claimant is disabled, and there is medical evidence showing DAA, then the ALJ must proceed to the second "round" or "stage" ("round two") to determine whether the DAA is "material" to the finding that the claimant is disabled, "appl[ying] the sequential evaluation process a second time to document materiality[.]"[2]  SSR 13-2p, 2013 WL 621536, at *6. "Materiality" is the degree to which an individual would still be found disabled if they stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b).

During round two, the ALJ "project[s] the severity of the claimant's other impairment(s) in the absence of DAA." SSR 13-2p, 2013 WL 621536, at *4, 7. In so doing, the ALJ "evaluate[s] which of [the claimant's] current physical and mental limitations. . . would remain if [the claimant] stopped using drugs or alcohol and then determine[s] whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the claimant's "remaining limitations are disabling. . . independent of [the claimant's] drug addiction or alcoholism," then the ALJ "will find [DAA] is not a contributing factor material to the determination of disability," and the claimant is deemed disabled. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). By contrast, if, absent the DAA, the claimant's "remaining limitations would not be disabling," the ALJ will determine that DAA "is a contributing factor material to the determination of disability," and will find the claimant not disabled. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

Here, the ALJ found that Plaintiff was not disabled at round two, step five of his analysis. A.R. 24-40.

During round one, step one of his analysis, the ALJ determined that Plaintiff had not

---

[2] If, however, the ALJ concludes that the claimant's combined impairments – including the DAA – are *not* disabling, the inquiry ends, and the ALJ need not determine DAA materiality. SSR 13-2p, 2013 WL 621536, at *5-6; *Bustamante*, 262 F.3d at 955 ("If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis.").

engaged in substantial gainful activity since his application date, November 8, 2017. A.R. 27. At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: depressive disorder; post-traumatic stress disorder (PTSD); and polysubstance use disorder (methamphetamine, heroin, and crack cocaine). A.R. 27. At step three, the ALJ determined that, in combination, Plaintiff's depressive disorder, post-traumatic stress disorder (PTSD) and polysubstance use disorder, satisfied Listing 12.04. A.R. 27. In so holding, the ALJ found that, when considering the Paragraph B factors in light of Plaintiff's substance abuse, Plaintiff possessed only a mild impairment in his ability to understand, remember, or apply information, and a moderate impairment in his ability to concentrate, persist, or maintain pace. A.R. 29. By contrast, the ALJ found that Plaintiff had marked impairments in two of the four Paragraph B factors, including his ability to interact with others and his ability to adapt or manage himself, thus rendering him disabled.[3] A.R. 29-30.

In assessing Plaintiff's Paragraph B limitations during round one, the ALJ found persuasive the opinion of testifying medical expert, Dr. Peterson. A.R. 31. The ALJ, however, found unpersuasive the opinions[4] of the state agency psychological consultants, Drs. Paxton and Constantin, and Plaintiff's treating therapist, Sarah Ulloa, MFT.[5] A.R. 30-32. Because the ALJ

---

[3] Under the Paragraph B criteria, a claimant's mental disorder renders him disabled if it results in two marked limitations in the four areas of mental functioning. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b).

[4] The court acknowledges that what were previously "opinions" from state agency medical and psychological consultants have now been relabeled as "prior administrative medical findings." 20 C.F.R. § 416.913(a)(5); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2016 WL 4702272, 81 Fed. Reg. 62560-01, at 62564 (Sept. 9, 2016). However, because "prior administrative medical findings" continue to be treated the same as other medical opinions, for clarity, the court continues to refer to the "prior administrative medical findings" as "opinions" throughout this Order. *See* 20 C.F.R. § 404.1520c (considering "prior administrative medical findings" in the same manner and using the same factors as "medical opinions"); *see also* 81 Fed. Reg. 62560-01, at 62564 ("We would consider and articulate our consideration of prior administrative medical findings using the same factors we use to consider medical opinions from medical sources.").

[5] As discussed in more detail below, the ALJ weighed the medical opinions at multiple points in his round one and round two analyses. *See* A.R. 30-32 (weighing medical opinions in round one Paragraph B analysis); A.R. 33 (relying on opinions of state agency psychological consultants during his round two Paragraph B analysis); A.R. 35-37 (weighing medical opinions during round two RFC analysis).

United States District Court
Northern District of California

1   found that Plaintiff's impairments met listing 12.04, the ALJ concluded at the third step of his

2   round one analysis that Plaintiff was disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(iii) (If one or a

3   combination of the claimant's impairments meets or equals the severity of a listed impairment, the

4   claimant is disabled.).

5          However, moving to the second round, the ALJ found at step three that, in the absence of

6   substance use, Plaintiff would not have an impairment or combination of impairments that met or

7   medically equaled one of the listed impairments.[6]  A.R. 29-34.  Specifically, the ALJ held that

8   Plaintiff's depressive disorder and PTSD would not meet or medically equal listing 12.04 because

9   Plaintiff no longer possessed two "marked" limitations in the Paragraph B criteria.  A.R. 32-34.  In

10  conjunction with his round two Paragraph B analysis, the ALJ found that, absent the substance

11  abuse,  Plaintiff possessed only a moderate (as opposed to a marked) limitation in his ability to

12  interact with others, and a mild (as opposed to a marked) limitation in his ability to adapt and

13  manage himself.  A.R. 33.  By contrast, the ALJ found that removal of the DAA from his

14  consideration of the other two functional areas -- Plaintiff's ability to understand, remember, and

15  apply information, and his ability to concentrate, persist, and maintain pace – did not impact his

16  conclusion regarding the extent of those limitations, which remained mild and moderate,

17  respectively.  A.R. 33.

18         In his round two, step three findings, the ALJ relied in part on the state agency

19  psychological consultants, whose opinions the ALJ previously found were not persuasive during

20  round one.  *See* A.R. 33 (relying on Drs. Paxton's and Constantin's assessment of mild

21  limitations); *but see* A.R. 30 (finding Drs. Paxton's and Constantin's opinions "not persuasive

22  when considering [Plaintiff's] substance use because they determined it to be non-severe").  The

23  ALJ also relied on Plaintiff's incarceration records as evidence that Plaintiff's limitations

24  improved when substance abuse was stopped.  A.R. 33 (citing records from the Criminal Justice

25  Mental Health Program, the Santa Rita Alameda County Jail ("Santa Rita"), San Francisco County

26

27  ────────────────
[6] The ALJ's findings at steps one and two of the five-step sequential analyses were the same in
    both rounds one and two, except for the fact that the ALJ eliminated Plaintiff's substance abuse (a
28  severe impairment during round one), as required, from consideration during round two.  *See* A.R.
    27, 32.

United States District Court
Northern District of California

Jail, California Forensic Medical Group, and Alameda County Behavior Health Care Services).

Given his round two, step three findings, the ALJ thus held that Plaintiff's substance use was a contributing factor material to the determination of disability.  A.R. 32.

At round two, step four, the ALJ subsequently determined that absent the substance abuse, Plaintiff would have the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels," but that he nevertheless required additional nonexertional limitations that he "perform simple, routine tasks" and that he "work in a nonpublic work setting."  A.R. 34.  At this fourth step, the ALJ found persuasive the state agency psychological consultants' opinions and medical expert Dr. Peterson's opinion.  A.R. 36.  The ALJ continued to find the opinion of Plaintiff's treating therapist, Dr. Ulloa, not persuasive.  A.R. 36-37.  The ALJ also acknowledged the opinion of examining psychologist, Dr. Scott Lines, but declined to consider it because Dr. Lines "did not offer an opinion as to [Plaintiff's] functional limitations."  A.R. 37.

At round two, step five, relying on the opinion of a vocational expert ("V.E."), the ALJ concluded that Plaintiff was not disabled because, in the absence of substance abuse, he was capable of performing other jobs existing in the economy, including lab cleaner, night cleaner, and marking clerk.  A.R. 38.

**B.    ALJ's Evaluation of the Medical Opinions**

Plaintiff argues that the ALJ erred in weighing all of the medical opinions, including those of:  (1) therapist Ulloa; (2) state agency psychological consultants Drs. Paxton and Constantin; (3) ME Dr. Peterson; and (4) psychologist Dr. Lines.  Because Dr. Lines' opinion pertains solely to the ALJ's materiality determination, the court addresses Dr. Lines' opinion with its discussion of the materiality issue below.

For the reasons below, the court concludes the ALJ erred in weighing the opinions of therapist Ulloa and Drs. Paxton and Constantin.  However, the ALJ's evaluation of ME Dr. Peterson's opinion was supported by substantial evidence; thus, the court affirms the ALJ's treatment of that opinion.

**1.    Legal Standard**

For claims filed before March 27, 2017, "[t]he medical opinion of a claimant's treating

United States District Court
Northern District of California

7

physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).   However, the regulations regarding evaluation of medical evidence have been amended and several of the prior Social Security Rulings, including Social Security Ruling 96-2p ("Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions"), have been rescinded for claims filed after March 27, 2017, as is the case here.   *See* Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a).

The new regulations provide that the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  20 C.F.R. § 416.920c(a).  They "displace [the Ninth Circuit's] longstanding case law" requiring an ALJ to articulate "specific and legitimate reasons" for rejecting a treating physician's opinion where the opinion is contradicted by other medical opinions.  *Woods,* 32 F.4th at 787, 791. Accordingly, the ALJ here was not required to provide "specific and legitimate" reasons for rejecting Plaintiff's treating or examining physicians' opinions.

Under the new regulations, the Commissioner instead must consider all medical opinions and "evaluate their persuasiveness" based on the following factors: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) "other factors."  20 C.F.R. § 416.920c(a)-(c).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that "form[ed] the foundation of the [prior] treating source rule."  Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853; *see also Woods*, 32 F.4th at 791-92.  The ALJ is required to explicitly address supportability and consistency in their decision.  20 C.F.R. § 404.1520c(b)(2).  As with all other determinations made by the ALJ, the ALJ's persuasiveness explanation must be supported by substantial evidence.  *See Woods,* 32 F.4th at 787.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to

8

support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

Typically, the ALJ "may, but [is] not required to," explain how they considered the remaining three factors listed in the regulations. *Id.* However, where two or more distinct medical opinions are equally supported and consistent, the ALJ should articulate how they considered factors other than supportability and consistency, including the treatment relationship, the extent of specialization, and any other relevant factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *see also Woods,* 32 F.4th at 792 (discussing 20 C.F.R. § 404.1520c(b)(3)) ("In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'").

### 2.      Analysis

As noted above, the ALJ weighed each of the medical opinions in this case at least two times – once considering Plaintiff's substance abuse and again after omitting consideration of the substance abuse.[7]

#### a.      Therapist Ulloa

Therapist Sarah Ulloa, MFT, treated Plaintiff from June 2017 through April 2018, during the time he was held at Santa Rita. *See* A.R. 1334-72. Ms. Ulloa saw Plaintiff on a monthly basis for a total of at least eight visits during that time. A.R. 1334-72. On October 27, 2017, Ms. Ulloa completed a medical source statement on Plaintiff's behalf, in which she noted that Plaintiff's mental health impairments included PTSD, depression, and borderline personality disorder. A.R. 398.

Therapist Ulloa opined that Plaintiff's impairments would remain severe in the absence of

---

[7] The ALJ did not, however, weigh psychologist Dr. Lines' opinion at all because he determined it did not constitute an "opinion" under the controlling regulations. A.R. 31, 35. As noted, Dr. Lines' opinion is discussed in more detail below with the materiality issue.

substance use, noting that he "had a traumatic childhood." A.R. 398. In terms of his functional limitations, Ms. Ulloa opined that Plaintiff possessed extreme limitations in his "activities of daily living," his "concentration, persistence, or pace," and that he possessed a marked limitation in his "social functioning." A.R. 398. Finally, Ms. Ulloa opined that Plaintiff had suffered four or more "episodes of decompensation within a [twelve] month period, each of at least two weeks duration." A.R. 398.

During the ALJ's round one Paragraph B analysis, in which he considered Plaintiff's substance abuse along with the rest of his impairments, the ALJ found that Ms. Ulloa's opinion was not persuasive. A.R. 31. In support, the ALJ asserted that Ms. Ulloa "utilized a form reflecting Paragraph B criteria that [is] not currently utilized under the current rules and regulations of the Social Security Administration, which renders this evidence less persuasive." A.R. 31. The ALJ also reasoned that Ms. Ulloa provided only "a brief supporting explanation," thereby supporting the rejection of her opinion. A.R. 32. Finally, the ALJ reasoned that Ms. Ulloa's opinion was inconsistent with the totality of the evidence. A.R. 32.

In support of the ALJ's consistency findings, the ALJ cited to Ms. Ulloa's own treatment notes from June 2017 through April 2018, during Plaintiff's incarceration at Santa Rita, and also to miscellaneous progress notes from intake, nursing, and other unspecified medical records from January 2016 to May 2017, while Plaintiff was incarcerated at both Santa Rita and at the Glenn Dyer detention facility. A.R. 32 (citing to A.R. 1335- 72 ("Exh. 10F"); A.R. 578-938 ("Exh. 6F")). The ALJ suggested that these records – which noted occasions when Plaintiff's thoughts were "clear and coherent," and when he was "alert" with "logical, linear" thought processes – demonstrated that Plaintiff possessed only a moderate, as opposed to a marked limitation, in his concentration, pace, and persistence. A.R. 32 (citing to A.R. 1335- 72 ("Exh. 10F"), A.R. 578-938 ("Exh. 6F")).

In his round two RFC analysis, during which the ALJ considered Plaintiff's impairments absent the substance abuse, the ALJ similarly found that Ms. Ulloa's opinions were not

1    persuasive.[8]  A.R. 36.  Again, in support, the ALJ asserted Ms. Ulloa had utilized an outdated

2    form, and that she provided only a "brief supporting explanation."  A.R. 36.  The ALJ also cited

3    again to observations contained in Plaintiff's incarceration records purporting to show that Ms.

4    Ulloa's opinion was inconsistent with the totality of the evidence, which the ALJ stated

5    demonstrated that Plaintiff was "able to perform simple, routine tasks" and to work "in a

6    nonpublic work setting."  A.R. 37.

7           The records the ALJ relied upon in discounting Ms. Ulloa's opinion at step four included

8    the same two categories of records the ALJ cited to above for discounting Ms. Ulloa's opinions in

9    conjunction with his first round Paragraph B analysis.  A.R. 36-37 (citing to A.R. 1335- 72 ("Exh.

10   10F"); A.R. 578-938 ("Exh. 6F")).  Additionally, the ALJ cited to:  (1) progress notes from a

11   three-day period of incarceration at the San Francisco County Jail from May 15, 2017 until May

12   18, 2017, A.R. 527-35 ("Exh. 2F"); (2) progress notes from Santa Rita psychiatrist, Dr. Graves-

13   Matthews, from July 2017 through March 2018, A.R. 544-56 ("Exh. 4F") and A.R. 1339-40,

14   1355-57, 1362-64 ("Exh. 10F"); (3) miscellaneous progress notes from the California Forensic

15   Medical Group for a three-day period from December 20, 2019 until December 22, 2019, when

16   Plaintiff was in custody at the Alameda County Jail, A.R. 1031-36 ("Exh. 9F"); and (4) additional

17   progress notes from psychiatrist, Dr. Said, and therapist, Mr. Oakes, MFT, at Santa Rita from

18   February through April 2019, A.R. 1376-84 ("Exh. 10F").   A.R. 36.

19          None of the above reasons proffered by the ALJ for wholly discounting Ms. Ulloa's

20   opinion were supported by substantial evidence.  First, the ALJ's conclusion that Ms. Ulloa's

21   opinion regarding Plaintiff's functional limitations was "unsupportable" based on the "outdated"

22   form that she utilized truly elevated "form over substance" and discounted relevant functional

23   limitations that the ALJ was required but failed to consider.  A.R. 32, 34.  Ms. Ulloa, in fact,

24   utilized the exact rating scale set forth in the controlling regulations for rating a claimant's

25   functional limitations.  *See* A.R. 398-99; *see also* 20 C.F.R. §§ 404.1520a(c)(4) (noting the

26   "following five-point scale:  [n]one, mild, moderate, marked, and extreme").  Moreover, Ms. Ulloa

27

28   _____

     [8] The ALJ did not cite to Ms. Ulloa's opinion in his round two Paragraph B analysis.  A.R. 33.

1    explicitly opined on Plaintiff's "ability to concentrate, persist, or maintain pace," utilizing

2    language identical to that found in the relevant regulation, 20 C.F.R. §§ 404.1520a(b) & (c).

3    Although Ms. Ulloa provided slightly different labels for the other two functional areas on which

4    she which opined, it was nevertheless clear from the substance of her opinion that she was indeed

5    opining on the remaining two limitations mentioned in the pertinent regulation.[9]  *See* 20 C.F.R. §§

6    404.1520a(c)(3).  Accordingly, the ALJ erred in discounting the substance of Ms. Ulloa's opinion

7    on this basis.

8         The ALJ also erred in concluding that Ms. Ulloa's opinion was not persuasive because it

9    contained only a "brief supporting explanation," while simultaneously finding persuasive and

10   adopting the limitations set forth by the state agency psychological consultants.  *See* A.R. 33, 36.

11   Ms. Ulloa explained her opinion by noting that Plaintiff had attempted suicide three times, that he

12   suffered from "abandonment issues" and polysubstance abuse, and that he attended special

13   education classes.  A.R. 398.  As noted, she also opined that Plaintiff's mental impairments would

14   remain severe in the absence of substance abuse based on his "traumatic childhood."  A.R. 398.

15        By contrast, state agency consulting psychologist, Dr. Paxton, offered a much briefer

16   explanation in favor of the limitations to which he opined in his March 2018 opinion.  Dr. Paxton

17   concluded that Plaintiff possessed severe depressive disorder and severe PTSD, but found that

18   Plaintiff's substance abuse was not severe.  A.R. 100.  He subsequently concluded that Plaintiff

19   possessed moderate limitations in his ability to interact with others and to concentrate, persist, or

20   maintain pace.  A.R. 101.  Dr. Paxton also found that Plaintiff possessed only mild impairments in

21   his ability to understand, remember, or apply information, and his ability to adapt or manage

22   himself.  *Id.*  Dr. Paxton explained simply that the functional limitations to which he opined were

23   "[b]ased on [the] overall evidence in file."  A.R. 99; *see also* A.R. 102-03 (answering "npsrts" in

24   response to prompts asking Dr. Paxton to "[e]xplain in narrative form" the limitations proffered).

25        Nor did state agency psychological consultant Dr. Constantin's June 2018 opinion contain

26

27   _____

     [9] Ms. Ulloa referred to Plaintiff's "ability to interact with others" instead as "social interaction;"
28   she also referenced Plaintiff's ability to "adapt or manage oneself" as his "daily activities."  A.R.
     398; *see also* 20 C.F.R. §§ 404.1520a(c)(3).

United States District Court
Northern District of California

1    any more explanation than that of Ms. Ulloa.  Dr. Constantin set forth functional limitations

2    identical to those of Dr. Paxton.  A.R. 115.  Her explanation was that although Plaintiff clearly had

3    symptoms, "[he] does not appear to be psychologically incapacitated" by the symptoms and that

4    the medical record did "not support [the] severity alleged." A.R. 115; *see also* A.R. 117-18

5    (answering "npsrts" in response to prompts asking Dr. Constantin to "[e]xplain in narrative form"

6    the limitations proffered).

7          In spite of Drs. Paxton's and Constantin's own cursory explanations, the ALJ nevertheless

8    found that Drs. Paxton's and Constantin's opinions were persuasive in his round two Paragraph B

9    analysis, adopting Paragraph B limitations that mirrored the functional limitations in their

10   opinions.[10]  A.R. 33.  The ALJ also found that  Drs. Paxton's and Constantin's opinions were

11   persuasive in his round two RFC analysis.  A.R. 36.  In so holding, the ALJ explicitly reasoned

12   that Drs. Paxton and Constantin "supported the[ir] findings with an explanation, which renders

13   this evidence more persuasive."  A.R. 36.

14         Because Ms. Ulloa's explanation in support of her opined functional limitations was at

15   least as detailed as those of the state agency consulting psychologists, the ALJ erred in discounting

16   her opinion for lack of explanation, and his findings regarding the supportability of Ms. Ulloa's

17   opinion were, therefore, not supported by substantial evidence.

18         Finally, the ALJ cited to numerous observations from medical-related visits in Plaintiff's

19   incarceration records to discount the limitations opined to by Ms. Ulloa.  Almost all of the ALJ's

20   citations were to observations regarding Plaintiff's demeanor and his thought process during

21   encounters with various clinicians throughout his incarceration, including his sessions with Ms.

22   Ulloa.  *See, e.g.,* A.R. 32, 36 (citing A.R. 1334-34, Exh. 10F) (therapist Ulloa notes that Plaintiff

23   was "cooperative" and "alert" with "clear and coherent" thoughts in session in which Plaintiff

24   discusses his past suicide attempts, including a recent attempt to hang himself while at the San

25

26   ───────────────

27   [10] As noted above, the ALJ found Drs. Paxton's and Constantin's opinions "not persuasive" in his
     round one Paragraph B analysis, which considered the effects of substance use and Plaintiff's
     other impairments.  A.R. 30.  That is because, contrary to the ALJ's own step two findings, both

28   Drs. Paxton and Constantin opined that Plaintiff's substance abuse was non-severe (which would,
     therefore, have rendered it not material).  A.R. 30, 100 (Dr. Paxton), 115 (Dr. Constantin).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Francisco County Jail); A.R. 36 (citing A.R. 756, Exh. 6F) (progress note from Glenn E. Dyer

2    Detention Facility "sick room" noting that Plaintiff was "calm and cooperative" when he was

3    treated following a recent 2016 hospitalization for pneumonia and heart infection); A.R. 36 (citing

4    A.R. 1031, Exh. 9F) (unknown clinician responds to prompt regarding Plaintiff's "level of

5    consciousness" as "awake and alert" upon Plaintiff's admission to what appears to be a health

6    clinic at the Alameda County Jail soon after 2019 hospitalization); A.R. 36 (citing A.R. 531-34,

7    Exh. 2F) (unknown clinician describes Plaintiff as "calm and appropriate" during three-day stay in

8    San Francisco County jail following his release from a safety cell after screaming and fighting on

9    the first day).  Although the particular citations demonstrate that Plaintiff was calm, alert, and

10   cooperative at times, they do not sufficiently undermine the functional limitations opined to by

11   Ms. Ulloa or the severity of Plaintiff's impairments.

12           Moreover, few, if any, of the records cited by the ALJ speak to the limitations and/or

13   treatment associated with Plaintiff's PTSD, which the ALJ and nearly every clinician determined

14   constituted a severe impairment.  The "insight and judgment" that Plaintiff was alleged to be

15   "developing" bore no relationship to Plaintiff's ability to perform "simple, routine tasks" or to

16   "work in a nonpublic setting."  A.R. 36.  Instead, the "judgment and insight" to which the ALJ

17   cited was that referred to by Santa Rita psychiatrist, Dr. Graves-Matthews, who, in turn, noted

18   Plaintiff's increasing awareness of the impact that childhood sexual abuse had upon him, and its

19   connection to his "built[-]up anger," self-blame and suicidal thoughts.  *See* A.R. 36 (citing A.R.

20   1338-40); *see also* A.R. 36 (citing A.R. 1356) (Dr. Grave-Matthews observed that Plaintiff's

21   "judgment and insight are developing regarding [the] connection between his drug use/self-

22   medication and earlier traumas.").

23           Because the incarceration medical records cited by the ALJ fail to demonstrate that

24   therapist Ulloa's opinion lacked consistency with the totality of the record, the ALJ's

25   determination that Ms. Ulloa's opinion was not persuasive fails for this reason as well.

26           For all of the reasons above, the ALJ's decision to reject Ms. Ulloa's opinion at round one,

27   step three and at round two, step four was not supported by substantial evidence.  The court

28   remands for the ALJ to reweigh Ms. Ulloa's opinion.

14

United States District Court
Northern District of California

### b.      State Agency Psychological Consultants

Plaintiff also argues that the ALJ erred in affording persuasive effect to the state agency consulting psychologist's opinions, which he contends were contradicted by his treating therapist, Ms. Ulloa's opinion.  While the court agrees, it notes that Plaintiff's argument relies on outdated law regarding the weight applied to medical opinions.

As set forth above, the court has already determined that the case should be remanded to the ALJ to reweigh Ms. Ulloa's opinion.  Because Ms. Ulloa's opinion was at least as supportable and consistent with the longitudinal record as the state agency consulting psychologists' opinions, on remand, the ALJ must also reweigh the opinions of state agency consultants Drs. Constantin and Paxton.  In doing so, the ALJ is required to consider the remaining three factors – treatment relationship, specialization, and any "other factors" -- with respect to all three opinions, including those from Ms. Ulloa, Dr. Constantin, and Dr. Paxton.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (ALJ should articulate how they considered factors other than supportability and consistency, including the treatment relationship, when they find two or more medical opinions about the same issue equally well-supported and consistent with the record); *accord Woods,* 32 F.4th at 792 (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (noting that when "'two or more medical opinions . . . about the same issue are . . . equally well supported . . . and consistent with the record. . . but are not exactly the same,' . . . the ALJ 'will articulate how [the agency] considered the other most persuasive factors'").

### c.      Dr. Peterson

Medical expert, Dr. Peterson, testified at the August 8, 2019 hearing that, based on his review of Plaintiff's medical records, Plaintiff suffered from the following medically determinable impairments:  substance use, unspecified depressive disorder, and unspecified personality disorder.  A.R. 53.  Dr. Peterson "ruled out" PTSD as a medically determinable disorder, based on Plaintiff's lack of treatment.[11]  A.R. 53.  Dr. Peterson additionally noted that there was a "likelihood" Plaintiff suffered from neurocognitive disorder "secondary to reported in utero drug

---

[11] As noted, the ALJ disagreed and found otherwise, concluding that Plaintiff's PTSD constituted a severe impairment.  A.R. 27.

1    exposure" and to a long history of drug and alcohol abuse.  A.R. 53.  He stated that "we would

2    need more testing" prior to ruling out neurocognitive disorder or borderline intellectual

3    functioning.  A.R. 53.

4         Dr. Peterson further testified that Plaintiff possessed a mild limitation, at most, in his

5    ability to understand, remember, or apply information, and a moderate limitation in his ability to

6    concentrate, persist, or maintain pace.  A.R. 54.  By contrast, Dr. Peterson opined that Plaintiff

7    possessed marked limitations in his ability to interact with others and to adapt and manage

8    himself, but found that substance use was "a material factor" in reaching that conclusion.

9    According to Dr. Peterson, absent the substance use, Plaintiff would possess only mild and

10   moderate limitations in those categories.  A.R. 54-55.

11        Dr. Peterson acknowledged the difficulty in estimating Plaintiff's functioning absent

12   substance abuse since Plaintiff had not completed twelve months of drug treatment.  A.R. 54.  Dr.

13   Peterson also suggested that Plaintiff's unwillingness to engage in psychotherapy made

14   assessment difficult.  A.R. 54 (noting that Plaintiff "failed to report to [a drug treatment program]"

15   and that psychotherapy was the "standard of care" for Plaintiff's "history of trauma"); *see also*

16   A.R. 56-57 ("[I]n order to reach a baseline of mental health, [Plaintiff] needed to engage in the

17   treatment that he was referred to and abstain for at least six months."); A.R. 59 (noting that one

18   needs first to "get control of the substance use so that [one] has the capacity to benefit from

19   psychotherapy").

20        The ALJ found Dr. Peterson's testimony persuasive regarding Plaintiff's limitations, with

21   and without the substance abuse.  A.R. 31, 36.  First, in his round one Paragraph B analysis, the

22   ALJ accepted the marked limitations to which Dr. Peterson opined.  A.R. 31.  Next, in assessing

23   Plaintiff's RFC at round two (absent the substance abuse), the ALJ accepted several of Dr.

24   Peterson's less stringent functional restrictions.  A.R. 36.

25        Plaintiff argues that the ALJ erred in finding Dr. Peterson's testimony persuasive for three

26   reasons.  First, Plaintiff contends that Dr. Peterson's testimony was internally inconsistent.

27   Second, Plaintiff argues that Dr. Peterson erred in his assessment regarding the efficacy of

28   medications in treating his symptoms.  Finally, Plaintiff argues that Dr. Peterson's opinion was

United States District Court
Northern District of California

16

1   faulty because Dr. Peterson did not review his complete medical records, including those from his

2   treating therapist, Dr. Ulloa.

3        Dr. Peterson's testimony regarding Plaintiff's limitations, the materiality of Plaintiff's

4   substance abuse, and the impact of medications on Plaintiff's symptoms was not internally

5   inconsistent.  Dr. Peterson based his opinion regarding the limitations and materiality on his

6   review of Plaintiff's "history of detoxification, substance abuse, and behavior associated with

7   those events."  A.R. 54.  Dr. Peterson's opinion may have been inconsistent with other opinions in

8   the record, namely that of Plaintiff's treating therapist, Ms. Ulloa, but it was not itself internally

9   inconsistent.  Moreover, while Dr. Peterson acknowledged that medications helped to relieve some

10  of Plaintiff's symptoms, he also noted their limitations.  *See* A.R. 54 ("Medication helps, but

11  psychotherapy is the standard.").

12       Plaintiff also suggests that Dr. Peterson's opinions were not supportable because he lacked

13  familiarity with Plaintiff's medical records, and, specifically, with Ms. Ulloa's records and

14  opinions.  Plaintiff asserts that Dr. Peterson failed to review Ms. Ulloa's October 2017 opinion,

15  and that Dr. Peterson also generally failed to review any medical records post-dating December

16  2017.  Pl. Mot. Summ. J. at 13 ("Dr. Peterson never mentioned and seemed to not have considered

17  the opinion of treating therapist Ulloa from October 2017.").  In opposition, the Commissioner

18  fails to clarify the records made available to Dr. Peterson, arguing simply that Ms. Ulloa's opinion

19  was "of little probative value."  Def. Cross-Mot. Summ. J. at 18.

20       Contrary to Plaintiff's position, the record reveals that Dr. Peterson did review at least

21  some of Plaintiff's post-December 2017 medical records.  For example,  Dr. Peterson testified

22  regarding the January 2018 opinion offered by Dr. Lines.  *See* A.R. 53 (testifying that "PTSD was

23  mentioned in 5F [Dr. Lines' report] because of the history, but it hasn't been the focus of clinical

24  attention"); A.R. 56; A.R. 558 (Dr. Lines' report, identified as exhibit "5F" below).  Furthermore,

25  at the August 2019 hearing, the ALJ admitted into the record numerous exhibits, which Dr.

26  Peterson attested that he had reviewed.  A.R. 50 (detailing exhibits admitted); A.R. 52 (Dr.

27  Peterson confirms that he had "the opportunity to review the record in this case.").  One of the

28  records admitted into evidence was "Exhibit 3E," which contains Ms. Ulloa's October 2017

medical source statement and opinion, thus suggesting that Dr. Peterson indeed reviewed the opinion.  *See* Court Transcript Index (listing exhibit 3E as pages "398-412"); A.R. 398-99 (Ms. Ulloa's opinion).[12]

For these reasons, the ALJ did not err in finding Dr. Peterson's opinion to be persuasive.

**C.      ALJ's Paragraph "B" Analysis**

Plaintiff also argues that the ALJ erred in his Paragraph B determination.

### 1.      Legal Standard

The Social Security Administration has supplemented the five-step sequential disability evaluation process with special regulations governing the evaluation of mental impairments at steps two and three of the five-step process.  *See generally* 20 C.F.R. § 404.1520a.  At step two of the sequential analysis, the ALJ considers whether a claimant suffers from a "severe" impairment, or combination of impairments.  20 C.F.R. § 404.1520.  In cases involving mental impairments, the ALJ must first determine whether the claimant has a medically determinable mental impairment by evaluating the claimant's "pertinent symptoms, signs, and laboratory findings."  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  The ALJ must then "specify the symptoms, signs, and laboratory findings that substantiate the presence of [each determined] impairment and document [the] findings."  *Id.*

If the ALJ finds a medically determinable mental impairment, the ALJ then must assess the degree of functional limitations resulting from the claimant's mental impairment with respect to the following functional areas:  1) the claimant's ability to understand, remember, or apply information; 2)  the claimant's ability to interact with others; 3) the claimant's ability to concentrate, persist, or maintain pace; and 4) the claimant's ability to adapt or manage oneself.  20 C.F.R. §§ 404.1520a(b)(2), (c)(3).  These four factors are known as the "Paragraph B" criteria.  *Id.*

Rating the degree of functional limitation at step two is a highly individualized process that

---

[12] Plaintiff correctly notes that the exhibits admitted into the record in August 2019 did not include exhibit 10F, the Behavior Health Care Services records, which included Ms. Ulloa's progress notes.  A.R. 50.

United States District Court
Northern District of California

requires the ALJ to consider all relevant evidence to determine the extent to which a claimant's impairment interferes with his or her "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  The ALJ rates the degree of limitation in each of the four areas using a five-point scale: "None, mild, moderate, marked, and extreme."  *Id.*; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1077–78 (9th Cir. 2007).

Finally, after determining the degree of functional limitation, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in Appendix 1.  20 C.F.R. § 404.1520a(d).  If the Commissioner determines that the severity of the claimant's mental impairment meets or equals the severity of a listed mental impairment, the claimant is deemed disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  Otherwise, the evaluation proceeds to step four of the general disability inquiry.  *See* 20 C.F.R. § 404.1520a(d)(3).

Under Paragraph B criteria, a claimant's mental disorder renders him disabled if it "result[s] in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b).  A claimant has a "marked" limitation if the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d).  By contrast, a claimant has an "extreme" limitation if he is "not able to function in this area independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(e).

It is the claimant's burden to prove the existence of a medically determinable mental impairment and that the mental "impairments and their symptoms affect his ability to perform basic work activities" at step two.  *See Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tackett,* 180 F.3d at 1098-99 (in steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.).

### 2.    Analysis

Plaintiff specifically argues that the ALJ should have determined that when his DAA was considered in conjunction with the round one Paragraph B analysis, he possessed "extreme"

1     limitations in interacting with others and in adapting and managing himself – as opposed to the

2     "marked" limitations the ALJ found.

3          The court, however, declines to rule on this issue because it has already remanded the case

4     to the ALJ to reconsider and reweigh the opinions of therapist Ulloa and Drs. Paxton and

5     Constantin.  Those opinions include multiple functional limitations, the reconsideration of which

6     will undoubtedly impact the ALJ's analysis of the Paragraph B factors on remand.  The court

7     concludes simply that the ALJ should reassess the Paragraph B limitations after reweighing the

8     medical opinions on remand.

9          **D.        ALJ's Failure to Follow Internal Policy Manual re Medical Expert Testimony**

10         As noted above, Plaintiff failed to appear for the August 8, 2019 hearing.[13]  A.R. 49-50.

11    The ME and VE were prepared to testify, and Plaintiff's counsel agreed on the record that the

12    experts could testify in Plaintiff's absence.  A.R. 51.

13         Plaintiff now argues that the ALJ erred in allowing Dr. Peterson to testify at the hearing in

14    his absence and in failing to subsequently provide Dr. Peterson with a summary of Plaintiff's

15    testimony.  A.R. 51-59.  The court disagrees.

16         Plaintiff contends the ALJ violated the SSA's internal policy manual, the Hearings,

17    Appeals, and Litigation Manual ("HALLEX"), and specifically § I-2-6-70(b), which provides in

18    pertinent part:

19

20         The ME may attend the entire hearing, but this is not required. If the ME was not
          present to hear pertinent testimony, such as testimony regarding the claimant's
21         current medications or sources and types of treatment, the ALJ will summarize the
          testimony for the ME on the record. If additional medical evidence is received at the
22         hearing, the ALJ will provide it to the ME for review before the ME testifies.

23         Here, the ALJ was unable to summarize Plaintiff's testimony for the ME on the record in

24    accordance with the policy manual because Plaintiff did not appear at the August 2019 hearing

25    and did not testify until a subsequently rescheduled hearing four months later in December 2019.

26

27    _____

28    [13] Plaintiff was not incarcerated at the time of that hearing.  His counsel noted that Plaintiff had
      been recently released from jail, and that counsel was expecting him, but counsel did not know
      where he was or why he failed to show for the hearing.  A.R. 49-50.

United States District Court
Northern District of California

1    On a related note, the parties disagree as to the records regarding Plaintiff's "medications

2    and sources and types of treatment" that Dr. Peterson reviewed prior to testifying in August 2019.

3    The Commissioner contends that Dr. Peterson was provided with Plaintiff's "treating records"

4    containing the "very types of information contemplated by HALLEX, including Plaintiff's current

5    medications and sources and types of treatment."  Def. Cross-Mot. Summ. J. at 10-11.  Plaintiff,

6    however, asserts that the Commissioner is incorrect, and that Dr. Peterson did not in fact review

7    his most recent treatment records.  Pl. Reply at 6-7.

8    The court need not resolve the factual dispute because Plaintiff waived this claim when his

9    counsel agreed on the record that Dr. Peterson could testify in his absence.  A.R. 49-50.

10   Moreover, even if there was no waiver, Plaintiff is not entitled to relief because "HALLEX does

11   not carry the force of law and therefore [the court] do[es] not review allegations of non-

12   compliance with it."  *Wilson v. Berryhill*, 732 F. App'x 504, 507 (9th Cir. 2018) (declining to

13   review claimant's argument that the ALJ did not comply with the HALLEX); *Roberts v. Comm'r*

14   *of Soc. Sec. Admin.*, 644 F.3d 931, 933 (9th Cir. 2011) (quoting *Parra*, 481 F.3d at 749) (declining

15   to review the claimant's argument because HALLEX "does not 'carry the force of law and [is] not

16   binding upon the agency'"); *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th

17   Cir. 2010) (explaining that "HALLEX does not impose judicially enforceable duties on either the

18   ALJ or this court").

19   For these reasons, the ALJ did not err.

20   **E.      ALJ's Materiality Finding**

21   Plaintiff argues that the ALJ erred in concluding that his DAA was a contributing material

22   factor to the disability determination.[14]  The court agrees.

23   In finding that the Plaintiff's DAA was material, the ALJ relied primarily on Plaintiff's

24   incarceration records and in part on the medical opinions of the state agency psychologists.  A.R.

25   33.  The ALJ did not, however, directly discuss the opinions of medical examiner, Dr. Peterson,

26

27   ──────────────────────

28   [14] Plaintiff bundled a myriad of arguments into his presentation of the materiality issue.  However, several of these arguments are actually distinct issues, which the court has addressed separately.

United States District Court
Northern District of California

1  therapist Ulloa, or the report of psychologist, Dr. Lines, in making the ultimate materiality

2  determination.[15]  *See* A.R. 30, 33.

3      Plaintiff asserts that the ALJ erred in ignoring Dr. Lines' report, and in relying solely on

4  evidence of his abstinence from the "highly structured" incarceration setting.  The Commissioner

5  counters that because Dr. Lines' report did not contain any opinions regarding functional

6  limitations, the ALJ was not required to consider it.  The Commissioner also contends that the

7  ALJ appropriately relied on the incarceration records to demonstrate that Plaintiff's behavior was

8  not as extreme during periods of abstinence, thus suggesting improved functioning.  Def. Mot. at

9  6-7, 11.

10      For the reasons below, the court concludes that the ALJ's materiality determination is not

11  supported by substantial evidence and remands for the ALJ to reconsider the materiality of

12  Plaintiff's DAA.

13                    **1.      Legal Standard**

14      In determining whether a claimant's DAA is material, the test is whether the individual

15  would still be found disabled if he or she stopped using drugs or alcohol.  *See* 20 C.F.R. §§

16  404.1535(b), 416.935(b); *Parra*, 481 F.3d at 746-47; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th

17  Cir. 1998).  An ALJ's process for making the DAA materiality finding differs depending on

18  whether the claimant's additional impairments are physical or mental.  SSR 13–2p(7), 2013 WL

19  621536, at *7.  Social Security Ruling 13–2p(7) provides that where a claimant has a co-

20  occurring mental disorder(s), there must be "evidence in the case record that establishes that [the]

21  claimant . . . would not be disabled in the absence of DAA" to support a DAA materiality

22  determination.  *Id.* at *9.

23      In making the determination, an ALJ "may consider medical judgments about the likely

24  remaining medical findings and functional limitations the claimant would have in the absence of

25  DAA."  *Id.* at *7.  The ALJ, however, is not "permit[ted] to rely exclusively on medical expertise

26

27  _____

28  [15] As noted above, the ALJ, however, discussed Dr. Peterson's and Ms. Ulloa's opinions at multiple other stages in his rounds one and two analyses.

United States District Court
Northern District of California

22

and the nature of a claimant's mental disorder" to support a finding of DAA materiality. *Id.* at *9. The claimant continues to have the burden of proof at the second materiality stage of the disability analysis to prove that his substance use is not a material contributing factor to his disability. *See Parra*, 481 F.3d at 745; SSR 13–2p(7), 2013 WL 621536, at *4, 7.

**2.     Analysis**

**a.     ALJ's Failure to Consider Dr. Lines' Report**

In January 2018, psychologist Dr. Lines interviewed Plaintiff for three hours at Santa Rita for the purpose of assessing his current mental functioning, as requested by Plaintiff's attorney, an assistant federal public defender. A.R. 558-66. Dr. Lines noted that Plaintiff's "first substance problem was in all probability being exposed to heroin and other substances in-utero from his drug-addicted mother." A.R. 558, 561. Dr. Lines diagnosed Plaintiff with PTSD based on his childhood trauma, which included physical and sexual abuse, the death of his mother when he was an infant, regular substance abuse by his father and grandparents, and witnessing several murders, including that of his childhood best friend. A.R. 560-61. Dr. Lines also diagnosed Plaintiff with persistent depressive disorder that stemmed from "his inadequate parenting." A.R. 562.

Dr. Lines concluded that Plaintiff's early use of marijuana, PCP, ecstasy, and cocaine altered "his brain functioning" and led to "impulsivity, impaired judgment, and affect dysregulation." A.R. 563. Dr. Lines also opined that Plaintiff's drug abuse constituted a "concerted effort at self-medicating" to avoid the effects of "his chronic PTSD, his depression, and the psychic pain" associated with his mental disorders. A.R. 563. He recommended that Plaintiff receive increased individual psychotherapy, continue his medications, and participate in individual and group treatment for his substance abuse. A.R. 565.

The ALJ acknowledged Dr. Lines' evaluation in conjunction with his round one Paragraph B analysis but declined to consider the substance of the report because Dr. Lines "did not offer an opinion as to [Plaintiff's] functional limitations." A.R. 31. In his round two analysis of Plaintiff's RFC, the ALJ acknowledged Dr. Lines' observations regarding Plaintiff's demeanor, but again declined to consider the substance of Dr. Lines' report because it was not an "opinion" offering functional limitations. A.R. 35 (noting that Plaintiff was "self-reflective" and "volunteered details

23

of his life without apparent hesitation," and was described as "mildly depressed"); A.R. 37.

Under the regulations currently in effect, the ALJ correctly determined that Dr. Lines' report did not constitute an "opinion." *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). In 2017, the SSA considerably revised its definition of "medical opinion" evidence. The updated regulations define a "medical opinion" as "a statement from a medical source about what [the claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in their "ability to perform [the] physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions . . . ." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). In revising the definition of "medical opinion," the SSA recognized that "[d]iagnoses and prognoses do not describe how an individual functions" and that although the SSA considers a claimant's statements about his or her symptoms, "[a] more appropriate focus of medical opinions would be perspectives from medical sources about claimants' functional abilities and limitations." 81 Fed. Reg. at 62,562; *see also* 20 C.F.R. § 416.913(a)(2), (3). Thus, a "medical opinion" must discuss both a claimant's limitations and "what [the claimant] is still capable of doing" despite those limitations, which Dr. Lines' report did not do. *Michael H. v. Saul*, 5:20-CV-417 (MAD), 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021) (concluding that physician's notes did not constitute an opinion because it did not discuss the plaintiff's limitations with "any specificity").[16]

---

[16] Here, Dr. Lines' report would more appropriately be considered "other medical evidence" under the revised regulations. 20 C.F.R § 404.1513(a)(3); *see also Shawna Ann J. v. Comm'r of Soc. Sec.*, 2021 WL 733804, at *4 (W.D.N.Y. Feb. 25, 2021) (revised regulations created distinct categories of evidence). "Other medical evidence" is defined as evidence "from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R § 404.1513(a)(3). Contrary to "medical opinions," for which an ALJ is required to provide his reasons regarding persuasiveness, an ALJ is typically not required to provide any analysis regarding how he considered "other medical evidence." 20 C.F.R. § 404.1520b(a) & (c)(3); *Broaddus v. Kijakazi*, No. 3:20-CV-01418, 2022 WL 1096624, at *9 (M.D. Pa. Apr. 12, 2022) (doctor's report that was comprised of "only his judgments about the nature and severity of [the plaintiff's] impairments, [her] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis" constituted "other medical evidence" such that ALJ was not required to "articulate how persuasive she found it").

United States District Court
Northern District of California

1    However, even though Dr. Lines' report was not a "medical opinion" that the ALJ was

2    required to discuss pursuant to 20 C.F.R. § 404.1520b(a), the report nevertheless constituted

3    "other evidence" that the ALJ should have considered in conjunction with his DAA materiality

4    analysis in accordance with Social Security Ruling 13-2(p)(8).  2013 WL 621536, at *10-11.

5    Social Security Ruling 13-2p, which continues to remain in effect following the 2017 Rule

6    Revisions, does not require that evidence rise to the level of a "medical opinion" under 20 C.F.R.

7    §§ 404.1513(a)(2) in order to be considered in conjunction with an ALJ's materiality

8    determination.  *See* 2013 WL 621536, at *10-11.  The ruling instead provides that the ALJ should

9    consider evidence from "other" medical and non-medical sources that help the ALJ "in

10   determining the severity of DAA and whether DAA is material to the finding of disability."  *Id.* at

11   *11.  Such evidence "can describe a claimant's functioning over time and can also be especially

12   helpful in documenting the severity of DAA because it supplements the medical evidence of

13   record."  *Id.*

14   Here, Dr. Lines' report fits squarely within the types of "other evidence" contemplated by

15   Social Security Ruling 13-2p(8).  *See id.*  Dr. Lines detailed the development of Plaintiff's mental

16   impairments, including their likely causes, along with the development and causes of Plaintiff's

17   DAA, and the interconnection between his DAA and the mental impairments.  A.R. 558-65; *see*

18   A.R. 563 (noting that Plaintiff's "serious substance abuse and resulting impairments in judgments"

19   were "a consequence" of "the extraordinary child abuse [Plaintiff] suffered").  Dr. Lines' report

20   speaks clearly to the severity Plaintiff's DAA and PTSD, and further describes "how well

21   [Plaintiff] is performing the activities of daily living in the presence of a comorbid impairment."

22   SSR 13-2p, 2013 WL 621536, at *11.

23   Accordingly, the ALJ's materiality determination was not supported by substantial

24   evidence because he failed to consider Dr. Lines' report pursuant to Social Security Ruling 13-2p.

25   On remand, the ALJ should consider Dr. Lines' report in reevaluating the materiality of Plaintiff's

26   DAA.

    **b.**  **ALJ's Failure to Consider that Plaintiff's Periods of**
          **Improvement Occurred in a Highly-Controlled Environment**

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

In determining that Plaintiff's DAA was material, the ALJ relied almost exclusively on Plaintiff's incarceration records to demonstrate that, when Plaintiff was not under the influence of substances, his functional limitations were not as severe as when he was abusing substances.  A.R. 33; *see also* A.R. 30.  The ALJ cited first to records related to Plaintiff's arrest and subsequent detention on May 15, 2017, which the ALJ found demonstrated Plaintiff's marked limitations in interacting with others and in adapting and managing himself when he was abusing substances. A.R. 30-31.  The ALJ then juxtaposed the May 2017 incident with the same incarceration records that the ALJ relied on in rejecting therapist Ulloa's opinion and in finding persuasive the state agency psychologists' opinions.  *See* A.R. 33 (citing exhibits 2F, 4F, 6F, 9F. and 10F); *cf.* A.R. 31-32 (rejecting therapist Ulloa's opinion regarding round one Paragraph B criteria); A.R. 36-37 (analyzing Plaintiff's RFC and finding persuasive state agency psychologists' opinions and not persuasive therapist Ulloa's opinion).  Those records again included:  (1) progress notes from a three-day period of incarceration at the San Francisco County Jail from May 15, 2017 until May 18, 2017, A.R. 527-35 ("Exh. 2F"); (2) progress notes from Santa Rita psychiatrist, Dr. Graves-Matthews, from July 2017 through March 2018, A.R. 544-56 ("Exh. 4F") and 1339-40, 1355-57, 1362-64 ("Exh. 10F"); (3) miscellaneous progress notes from the California Forensic Medical Group for a three-day period from December 20, 2019 until December 22, 2019, when Plaintiff was in custody at the Alameda County Jail, A.R. 1031-36 ("Exh. 9F"); (4) additional progress notes from psychiatrist, Dr. Said, and therapist, Mr. Oakes, MFT, at Santa Rita from February through April 2019, A.R. 1376-84 ("Exh. 10F"); (5) Ms. Ulloa's own treatment notes from June 2017 through April 2018 during Plaintiff's incarceration at Santa Rita, A.R. 1335- 1372 ("Exh. 10F"); and (6) miscellaneous progress notes from intake, nursing, and other unspecified medical records while Plaintiff was incarcerated at the Glenn Dyer detention facility and at Santa Rita dating from January 2016 to May 2017, A.R. 578-938 ("Exh. 6F")).

The ALJ reasoned that the various observations in the incarceration records regarding Plaintiff's cooperation and calm demeanor when he was sober suggested that, absent DAA, he possessed only moderate difficulties in interacting with others.  A.R. 33.  Similarly, the ALJ reasoned that those same observations in the incarceration records also supported a more relaxed

limitation in Plaintiff's ability to adapt and manage himself absent the DAA – a mild limitation as opposed to a marked limitation.  A.R. 33.

Social Security Ruling 13-2p recognizes Plaintiff's case represents one of the "most complicated scenario[s] in DAA cases," namely, "the determination of whether an impairment would be expected to improve to a non-disabling degree if [Plaintiff] ceased substance use." *Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *4 (D. Or. Oct. 28, 2020) (discussing SSR 13-2p, 2013 WL 621536, at *7).  It is complicated because there is no reliable method for determining whether a co-occurring mental impairment would improve with abstinence.  SSR 13-2p, 2013 WL 621536, at *9.   Moreover, in considering a period of abstinence, there is no "exact guidance on the length and number of periods of abstinence to demonstrate whether DAA is material."  *Id.* at *12.  Rather, the period of time should be "long enough to allow the acute effects of drug or alcohol use to abate," which differs in in individual cases – sometimes requiring a "matter of weeks," and sometimes "months or even longer."  *Id.*

Plaintiff's argument on this issue is twofold.  First, Plaintiff disputes that the evidence cited by the ALJ demonstrates any improvement in his condition.  Second, while acknowledging that the record contains evidence of at least six months of abstinence from the time he was incarcerated, Plaintiff nevertheless contends that under Social Security Ruling 13-2(p), the ALJ could not rely solely on a period of incarceration because, to the extent there was any improvement in his condition, there is no evidence that it was the result of abstinence as opposed to something else.  *See* Pl. Mot. Summ. J. at 13 (noting sobriety "from June 2017 through December 2017").

The ALJ's analysis of the issue falls short because his cited records fail to demonstrate that Plaintiff's co-occurring mental impairments "would improve to the point of disability in the absence of DAA."  *See* SSR 13-2(p)(7)(d), 2013 WL 621536, at *9.  Social Security Ruling 13-2p instructs that "improvement of a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not entirely the cessation of substance use."  *Id.* at *12 (noting that "[a] co-occurring mental disorder may appear to improve because of the structure

United States District Court
Northern District of California

1    and support provided in a highly structured treatment setting").  In support of his conclusion

2    regarding materiality, the ALJ utilized a single episode, Plaintiff's May 2017 arrest and detention

3    at the San Francisco County Jail, as the purported baseline for Plaintiff's functional limitations

4    when DAA is considered with his co-occurring mental impairments.[17]  A.R. 30, 32.  As noted, the

5    ALJ then contrasted that single episode with various clinicians' general observations during

6    Plaintiff's incarceration regarding his demeanor, thought process, and sometimes grooming and/or

7    behavior.  A.R. 33.

8            This comparison, however, fails in part because there is no evidence to support the ALJ's

9    inference that the single May 2017 episode was indeed representative of Plaintiff's baseline

10   behavior and functional limitations when both his substance abuse and other mental impairments

11   are considered.  *See* SSR 13-2p, 2013 WL 621536, at *13 ("[A] single hospitalization or other

12   inpatient intervention is not sufficient to establish that DAA is material when there is evidence that

13   a claimant has a disabling co-occurring mental disorder[s].").  Moreover, observations that

14   Plaintiff appeared as "calm" with "good eye contact" and "organized thought processes" at

15   particular times during his incarceration similarly fail to demonstrate that Plaintiff possessed more

16   relaxed functional limitations absent the substance abuse -- especially in a case where nearly every

17   clinician diagnosed Plaintiff with severe PTSD and depression.  *See Norman v. Berryhill*, No. 17-

18   CV-04108-SI, 2018 WL 4519952, at *9 (N.D. Cal. Sept. 19, 2018) (holding that ALJ's finding

19   that plaintiff "present[ed] as 'pleasant and cooperative' [wa]s not inconsistent with allegations of

20   depression, particularly where. . . every clinician who treated or examined her diagnosed plaintiff

21   with depression, PTSD, and/or anxiety disorder) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1164

22   (9th Cir. 2014) ("the treatment records must be viewed in light of the overall diagnostic record");

23   *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (finding

24   examining expert's diagnoses of major depression, panic disorder, PTSD, and nightmare disorder

25   _____

26   [17] During that three-day period from May 15, 2017, through May 18, 2017, Plaintiff was arrested
     and detained in the San Francisco County Jail.  A.R. 515-35.  Authorities observed that Plaintiff

27   appeared to be under the influence at the time of his arrest.  A.R. 523.  Plaintiff entered the
     holding cell screaming and fighting with other detainees.  A.R. 519.  Plaintiff later admitted that

28   he had been using heroin and methamphetamine that day, A.R. 523, and he calmed down as he
     detoxed over the second and third days.  A.R. 527-35.

United States District Court
Northern District of California

were not inconsistent with what ALJ characterized as "benign Mental Status Exam" where expert did not call the exam benign and where exams noted claimant "to be tearful and sad, with a monotone and hypophonic voice and psychomotor retardation" and noted "blunted affect and uncontrolled crying").

Alternatively, to the extent that the ALJ's cited observations could, in fact, be construed to demonstrate "improvement," there is nothing to show whether that "improvement" was due to the therapy and care Plaintiff received while incarcerated, such as that from therapist Ulloa and psychiatrist, Dr. Graves-Matthew, or whether the "improvement" was indeed due to Plaintiff's abstinence. *See* SSR 13-2p, 2013 WL 621536, at *9 ("We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA."). There is no dispute here that the records cited by the ALJ in support of his materiality finding were all from periods of Plaintiff's incarceration.

Social Security Ruling 13-2p instructs that in order to make a materiality determination in the case of a co-occurring mental health impairment and DAA, and ALJ "need[s] evidence *from outside of such highly structured treating settings* demonstrating that the claimant's co-occurring mental disorder(s) has improved, or would improve, *with abstinence.*" *Id.* at *13 (emphasis added). Given the Plaintiff's history, it is unclear in this case whether such evidence exists. Nevertheless, the court agrees with the multiple courts in this district that have held that materiality is not shown where the evidence does not separate the effects of the structured environment and the purported sobriety.[18] *See Keelen v. Comm'r of Soc. Sec.*, No. 19-CV-00461-LB, 2020 WL 1306982, at *11 (N.D. Cal. Mar. 19, 2020); *Belvin v. Berryhill*, 18-cv-02637-KAW, 2019 WL 4751875, at *5 (N.D. Cal. Sept. 30, 2019) (noting that "it [was] impossible to separate

---

[18] The Commissioner relies on *Tyrone W. v. Saul* for his argument that "a prolonged period of sobriety, even within the context of a highly structured environment such as incarceration, can prove instructive, as it is distinguishable from isolated, short-term interventions." 2020 WL 6363839, at *5. *Tyrone*, however, is distinguishable because in that case, the court possessed "ample evidence" by which to contrast Plaintiff's "sustained period of sobriety" with his "periods of substance use." *Id.* No such evidence exists here.

29

the effects of Plaintiff's medication compliance and his residential placement from his abstinence, which, pursuant to Social Security Ruling 13-2p, requires a finding of immateriality [of Plaintiff's drug use]"); *see also Pittaluga v. Comm'r of Social Security*, 18-cv-03067-VC, 2019 WL 2897849, at *1 (N.D. Cal. July 5, 2019) (finding it "doubtful" to rely on jail records for accurate mental health portrayal "because the jail environment is highly structured").   Because it is unclear from the record and from the ALJ's analysis in this case whether any alleged improvement came from the structured environment or from abstinence, the ALJ's materiality determination is not supported by substantial evidence.

In sum, the court remands to the ALJ to reconsider the materiality determination in light of Dr. Lines' report and, to the extent relevant, the reweighing of therapist Ulloa's and Drs. Paxton's and Constantin's medical opinions on remand as ordered above.   Additionally, in reconsidering materiality, the ALJ should also consider whether Plaintiff's disability improved absent DAA in light of any evidence from *outside the incarceration setting* in accordance with Social Security Ruling 13-2p.  *See* 2013 WL 621536, at *13.  If the ALJ again concludes that, absent DAA, Plaintiff's disability improves, the ALJ should further consider whether the improvement is related to abstinence or to other factors as required by Social Security Ruling 13-2p.  *See id.* at *9

**F.     ALJ's Failure to Develop the Record as to Cognitive Impairments**

Plaintiff also contends that the ALJ failed to properly develop the record regarding the impairments related to his neurocognitive functioning.  For the reasons below, the court agrees.

Plaintiff attended special education classes when he was in school.  A.R. 390, 398.  He does not know how to pay bills, handle a savings account, or use a checkbook, and he stated that he needs help with both reading and spelling.  A.R. 406, 408.  Psychiatrist Dr. Graves-Matthews, one of Plaintiff's treating psychiatrists while he was incarcerated, repeatedly observed that Plaintiff is "cognitively impaired" and that he has "difficulty processing simple information."  *See* A.R. 549, 551.  Additionally, as noted, examining psychologist Dr. Lines stated that Plaintiff likely suffered from impaired brain functioning due to his drug use and in utero exposure to his mother's drug use, and the medical expert, Dr. Peterson opined that more testing would be needed to "rule out" borderline intellectual functioning and/or neurocognitive disorder.  *See* A.R. 53, A.R.

559, 561, 563.

Plaintiff contends that ALJ should have ordered additional testing and record development regarding whether he had severe borderline intellectual functioning or neurocognitive disorder. The Commissioner suggests that the ALJ considered the neurocognitive and intellectual issues at steps two and four of his five-step sequential analysis, and that any error in failing to further develop the record was harmless.

### 1. Legal Standard

While it is true that a plaintiff bears the overall burden of proving disability, the ALJ in a social security case bears an independent and "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  Importantly, this duty extends not only to unrepresented claimants, but also to cases where the claimant has representation.  *See Smolen*, 80 F.3d at 1288; *see also Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003).  This duty is heightened where the claimant may be mentally ill and thus unable to effectively protect his or her own interests.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The existence of ambiguous evidence triggers the ALJ's duty to "conduct an appropriate inquiry." *Id.* (quoting *Smolen*, 80 F.3d at 1288) ("If the ALJ thought he needed to know the basis of [a physician's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them."). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citations omitted).  The regulations additionally provide that the ALJ may order further consultative examination to "resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision." *See* 20 C.F.R. § 416.919a.  Further development of the record is required when the additional evidence needed is not contained in the records of the claimant's medical sources, and when highly technical or specialized medical

31

evidence not available from the claimant's medical sources is needed.   20 C.F.R. § 416.919a(b).

Once the duty to further develop the record is triggered, failure to do so constitutes reversible

error.   *See Tonapetyan*, 242 F.3d at 1150–51.

### 2. Analysis

Here, contrary to the Commissioner's suggestion, the ALJ failed to further clarify and/or

address at any step of his decision the ambiguous evidence from Plaintiff's treating psychiatrist,

examining psychologist, and the testifying medical expert regarding the existence of a

neurocognitive impairment and/or borderline intellectual functioning.  *See* A.R. at 27-29 (step two

analysis); A.R. 34-37 (RFC analysis).   That was error.   On remand, the ALJ should further

develop the record to ascertain the extent of Plaintiff's cognitive impairments.

### G. ALJ's Evaluation of Plaintiff's Mental Impairment Testimony[19]

Plaintiff argues that the ALJ erred in rejecting his subjective symptom testimony.  The

court agrees and concludes that remand is required for the ALJ to reconsider Plaintiff's subjective

testimony regarding his mental impairments.

On December 17, 2019, Plaintiff testified while incarcerated.  A.R. 67-91.  He testified that

he was receiving weekly mental health treatment in jail, and that he was "very familiar" with both

mental health treatment and psychiatric medications while incarcerated.  A.R. 81.  Plaintiff has a

history of being "in and out" of detention and/or incarceration, testifying that upon his release

from incarceration, he is typically required to "go straight into some type of residential drug

treatment . . . or some type of mental health treatment setting." A.R. 83.  Plaintiff acknowledged

that he had been in several rehabilitation centers in the past, but stated that he "always end[ed] up

struggling and failing" and that he was never able to complete a rehabilitation program because of

his mental health and addiction issues.  A.R. 84-85.  Plaintiff also suggested he was not

necessarily abstinent just because he was incarcerated, and noted that, at the time of the hearing,

he continued to suffer from substance abuse.  A.R. 86.  Plaintiff testified that he also continued to

---

[19] The court addresses the ALJ's rejection of Plaintiff's symptom testimony regarding his physical impairments with its discussion of the ALJ's evaluation of Plaintiff's cardiovascular impairments in the issue below.

1  hear voices and to "deal[] with" anxiety, depression, anger, and PTSD.  A.R. 88.

2          Plaintiff also submitted a function report in December 2017, approximately two years prior

3  to his hearing testimony in this case.  A.R. 402-11.  There, Plaintiff stated that he has difficulty

4  going out alone due to his PTSD and anxiety, that he hears voices every day, and that "sometimes

5  people are following me and try[ing] to kill me."  A.R. 406, 409.

6          The ALJ concluded that absent the DAA, Plaintiff's testimony regarding the intensity,

7  persistence and limiting effects of his symptoms was "not entirely consistent with the objective

8  medical evidence and other evidence."  A.R. 35.  In support, the ALJ cited to the medical

9  opinions, incarceration records, [20] and to his thought process and demeanor during his examination

10  with psychologist, Dr. Lines.  A.R. 35.

11          **1.      Legal Standard**

12          In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to

13  resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the

14  ALJ's conclusion must be upheld."  *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470,

15  1473 (9th Cir. 1984) (citations omitted).  An ALJ is not "required to believe every allegation of

16  disabling pain" or other nonexertional impairment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

17  1989) (citing 42 U.S.C. § 423(d)(5)(A)).  However, if an ALJ discredits a claimant's subjective

18  symptom testimony, the ALJ must articulate specific reasons for doing so.  *Greger v. Barnhart*,

19  464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on

20  general findings, but "must specifically identify what testimony is credible and what evidence

21  undermines the claimant's complaints."  *Id*. at 972 (quotations omitted); *see also Thomas v.*

22  *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are

23  "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

24  claimant's testimony").  The ALJ may consider "ordinary techniques of credibility evaluation,"

25

26  [20] Again, the ALJ cited to the same incarceration records that he relied on as support for his
materiality determination, for rejecting therapist Ulloa's opinion, and for finding persuasive the
27  state agency psychologists' opinions (discussed above at page ADD).  *See* A.R. 33 (citing exhibits
2F, 4F, 6F, 9F. and 10F); *cf.* A.R. 31-32 (rejecting therapist Ulloa's opinion regarding round one
28  Paragraph B criteria); A.R. 36-37 (analyzing Plaintiff's RFC and finding persuasive state agency
psychologists' opinions and not persuasive therapist Ulloa's opinion).

United States District Court
Northern District of California

1   including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also

2   consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek

3   treatment or to follow a prescribed course of treatment."  *Smolen*, 80 F.3d at 1284.

4          The determination of whether or not to accept a claimant's testimony regarding subjective

5   symptoms requires a two-step analysis.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

6   First, the ALJ must determine whether or not there is a medically determinable impairment that

7   reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b),

8   416.929(b); *Smolen*, 80 F.3d at 1281-82.  "At this step, the medical evidence need not corroborate

9   the severity of the alleged symptoms; the medical evidence need only establish that the

10  impairment could reasonably be expected to cause some degree of the alleged symptoms."  *Smith*

11  *v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028,

12  1036 (9th Cir. 2007)).  Once a claimant produces medical evidence of an underlying impairment,

13  the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely

14  on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms.

15  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted).

16         Then, absent affirmative evidence that the claimant is malingering, the ALJ must provide

17  "specific, clear and convincing" reasons for rejecting the claimant's testimony.  *Vasquez v. Astrue*,

18  572 F.3d 586, 591 (9th Cir. 2009).  The Ninth Circuit has reaffirmed the "specific, clear and

19  convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony.

20  *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see Smith*, 14 F.4th at 1112 (noting

21  that the "specific, clear and convincing" standard "is the most demanding required in Social

22  Security cases" (citation and quotation marks omitted)).  Under this standard, the ALJ must

23  "specify which testimony [they] find[] not credible, and then provide clear and convincing

24  reasons, supported by evidence in the record, to support that credibility determination."  *Smith*, 14

25  F.4th at 1112 (quoting *Brown-Hunter*, 806 F.3d at 489).

26              **2.       Analysis**

27         Plaintiff argues that the ALJ's reliance on "numerous one or two[-]word reports of [his]

28  presentation in medical settings unrelated to treatment, examination, or assessment of [his] mental

United States District Court
Northern District of California

impairments" was insufficient.  Pl. Mot. Summ. J. at 18.  The Commissioner counters that the ALJ also relied on medical source opinions in support of his credibility findings.

The court concludes that the ALJ's partial rejection of Plaintiff's mental impairment symptom testimony is not supported by substantial evidence because the ALJ failed to provide clear and convincing reasons.  Notably, here, the ALJ failed to specify *which* symptom testimony he rejected, leaving the court to guess as to which symptoms are undermined by the cited evidence and medical opinions.  *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). Moreover, as set forth above, the ALJ erred in weighing the medical opinion evidence regarding Plaintiff's impairments; and, therefore, on remand, it is necessary for the ALJ to reevaluate Plaintiff's symptom testimony in light of the ALJ's reconsideration of the opinions of Ms. Ulloa and Drs. Paxton and Constantin.

### H.    ALJ's Evaluation of Plaintiff's Congestive Heart Failure and Plaintiff's Related Symptom Testimony

In addition to his mental impairments, Plaintiff also suffered from cardiovascular impairments, including congestive heart failure.  Plaintiff argues that the ALJ erred in evaluating his congestive heart failure at step two and in rejecting his symptom testimony.  The court agrees that the ALJ erred on both counts.

The record suggests that Plaintiff's cardiovascular issues date back to as early 2016, when he was prescribed medication for cardiovascular disease, A.R. 767, and was subsequently hospitalized in 2016 for what he reported was a "heart infection."  A.R. 756.  Plaintiff's incarceration records also specifically note congestive heart failure in May 2017.  A.R. 531. Subsequently, in March 2018, stage agency medical consultant, Dr. Rao, acknowledged that Plaintiff's records included a history of congestive heart failure, but Dr. Rao nevertheless found

1    that it was not a medically determinable impairment.  A.R. 99, 100.[21]

2           Nearly twenty months later, in November and December 2019, around the time of

3    Plaintiff's hearing in this case, Plaintiff made several trips to the emergency room as a result of his

4    congestive heart failure.  A.R. 1028-31, 1307-11.  At his December 17, 2019 hearing, Plaintiff

5    testified that he was still feeling "lightheaded and dizzy and having problems breathing;" that he

6    was unable to walk even short distances without "being out of breath and needing to stop;" and

7    that he currently was not on work detail at Santa Rita due to his medical condition.  A.R. 72, 80.

8    He noted that his doctors told him that he would be dealing with the congestive heart failure

9    symptoms and problems "for the rest of [his] life" because his heart was "only working at thirty

10   percent," and "hearts generally [do not] regenerate."  A.R. 79.

11          The ALJ found, contrary to Dr. Rao's opinion, that Plaintiff's congestive heart failure

12   constituted a medically determinable impairment.  A.R. 27.  The ALJ acknowledged that Plaintiff

13   suffered from congestive heart failure in 2017, but suggested that the limited medical evidence

14   from that time demonstrated that it was not then severe; nor did it meet the durational

15   requirements.  *See* A.R. 28 (citing A.R. 531, and noting that on May 17, 2017, Plaintiff "reported

16   no chest pain or dizziness," "exhibited no swelling (edema), and no shortness of breath overall,"

17   "was able to walk upstairs without difficulty," and "had a regular heart rate and rhythm").

18          The ALJ subsequently noted the recent 2019 episode, and, following the December 17,

19   2019 hearing, the ALJ left the record open for thirty days so that Plaintiff could submit additional,

20   more recent medical records regarding Plaintiff's 2019 congestive heart failure.  A.R. 71.  Plaintiff

21   then submitted additional records dated through December 24, 2019.  *See* A.R. 1029-13, 1270,

22   1306-15.  Unfortunately, though, those records contain no medical opinions and fail to elaborate

23   upon or explain Plaintiff's prognosis.  *See* A.R. 1029-13, 1270, 1306-15.  Instead, the medical

24   records primarily included mostly cryptic entries, which had been logged into various

25   incarceration charts by unidentified clinicians, including what appears to be an intake screening

26   chart from Santa Rita's health unit, a chart of Plaintiff's vital signs, and a log of Plaintiff's sick

27

28   [21] In a subsequent review in June 2018, another state agency medical consultant, Dr. Reid, did not
     address Plaintiff's congestive heart failure.  A.R. 98, 114.

United States District Court
Northern District of California

calls at Santa Rita. *See* A.R. 1029-31 (intake screening chart for relevant time period from what appears to be the health unit at Santa Rita); A.R. 1270 (chart of Plaintiff's vitals, including blood pressure); A.R. 1306-15 (prison log of sick calls).

Following the ALJ's consideration of the additional records, the ALJ concluded that Plaintiff's 2019 episode was not severe "due to the lack of durational information." A.R. 28. In so holding, the ALJ stated that while the

> [congestive heart failure] is not established as severe at this time, if over the next [nine to twelve] months, it is established as severe, and particularly if it is at listing level, then this unfavorable decision may need to be reopened to assess when the [congestive heart failure] became severe (with a likelihood that it would be November or December 2019).

A.R. 28.

The ALJ also subsequently rejected Plaintiff's symptom testimony regarding his congestive heart failure. A.R. 35. He generally found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of the symptoms he described were "not entirely consistent with the objective medical and other evidence." A.R. 34-35. The only specific reason the ALJ gave for rejecting Plaintiff's testimony regarding his congestive heart failure was that "due to the lack of durational information," it could not be considered a severe impairment. A.R. 35.

Following the ALJ's unfavorable decision in April 2020, there is nothing to suggest that Plaintiff's case was subsequently reopened at the administrative level or that additional evidence regarding his 2019 congestive heart failure was thereafter submitted to the SSA.

### 1.    Legal Standard

At step two of the five-step sequential evaluation for disability claims, the ALJ must determine whether the claimant has one or more severe impairments that significantly limit a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c); 416.920(a)(4)(ii) and (c).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 404.1522(a). "Basic work activities are abilities and aptitudes

necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Smolen*, 80 F.3d at 1290 (quotation omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id.* (quotations omitted). A severe impairment "must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. § 416.921, and the ALJ must "consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Smolen*, 80 F.3d at 1290 (citations omitted).

Additionally, in order to be "severe" at step two, an impairment must satisfy what is referred to as "the duration requirement," and "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

In practice, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290; *see also Simpson v. Berryhill*, No. 17-CV-05491-BLF, 2019 WL 1003355, at *3–4 (N.D. Cal. Mar. 1, 2019) (quoting *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims."). "[Step two] is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck*, 869 F.3d at 1048-49.

If the ALJ erroneously determines that an alleged impairment is not "severe" at step two, the reviewing court must determine whether the error was harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Any failure to classify an impairment as non-severe at step two is harmless if the ALJ subsequently considered the limitations posed by the impairment at a later step in the inquiry. *See McGuire v. Kijakazi*, No. 20-35898, 2021 WL 5861284, at *1 (9th Cir. Dec. 7, 2021) (finding that the ALJ's error at step two was harmless since the ALJ considered the non-severe impairment later in the inquiry); *Tadesse v. Kijakazi*, No. 20-16064, 2021 WL 5600149, at *1 (9th Cir. Nov. 30, 2021) ("Although an error at step two may be considered harmless where the ALJ moves to the next step in the analysis, the decision must reflect that the ALJ considered any limitations posed by the impairment at either step four or step five.").

United States District Court
Northern District of California

2.      **Analysis**

Contrary to statements otherwise, the longitudinal record suggests that Plaintiff's congestive heart failure was not a "new" condition at the time of the 2019 hearing because Plaintiff had suffered from it in the past.  A.R. 531, 756, 767.  The ALJ himself acknowledged the existence of medical records regarding Plaintiff's congestive heart failure from 2017.  A.R. 28 (noting that "[r]ecords from May 2017 indicate the claimant alleged congestive heart failure").  However, as the ALJ appropriately found, there was no evidence that Plaintiff's prior 2017 episode of congestive heart failure resulted in his "inability to engage in SGA [substantial gainful activity]" for "the required [twelve]-month period."  SSR 82-52, *Titles II and XVI: Duration of Impairment*, 1982 WL 31376, at *1.  Indeed, Plaintiff did not allege disability based on the 2017 congestive heart failure in his November 2017 SSI application, and Plaintiff's attorney at the December 2019 hearing suggested that the impairment was "new" to him.  A.R. 348.

Notably, Plaintiff does not challenge on appeal the ALJ's determination that the 2017 episode of congestive heart failure was not severe.  Nor does Plaintiff argue that his 2017 episode of congestive heart failure prevented him from engaging in substantial gainful activity for a period of twelve months.

Instead, Plaintiff focuses on the 2019 episode of congestive heart failure and argues that the ALJ erred in determining at step two that it was not severe because it failed to meet the durational requirement.  Plaintiff suggests that his testimony and medical records demonstrated that his basic daily activities were clearly impacted by the 2019 incident, noting that he had difficulty simply walking within the jail to retrieve his medications.  A.R. 82.

The Commissioner mistakenly construes the ALJ's decision as suggesting that the ALJ indeed concluded on the merits that Plaintiff's 2019 congestive heart failure had no more than minimal limitations on Plaintiff's ability to perform basic work activities and that the episode was not expected to last twelve months.  Def. Mot. Summ. J. at 21-22.  While it is true that the ALJ implicitly made those findings regarding Plaintiff's 2017 episode of congestive heart failure, the ALJ declined to make any findings regarding the limitations posed by Plaintiff's 2019 heart

failure.[22]  *See* A.R. 28, 35.

Nor did the ALJ find that Plaintiff's 2019 congestive heart failure was not expected to last twelve months or offer any hypothesis regarding its likely length or duration.  *See* A.R. 28, 35. Instead, the ALJ simply found that any impairment caused by Plaintiff's 2019 heart failure was not severe because, at the time of April 2020 decision, it had not lasted the requisite twelve months.  *See* A.R. 28 (noting that "the CHF [congestive heart failure] is not established as severe *at this time*") (emphasis added); A.R. 35 ("[T]he evidence *at this time* does not support congestive heart failure as a severe impairment *due to the lack of durational information*.") (emphasis added). Social Security Ruling 82-52, which governs the durational requirement, further undermines the Commissioner's argument, stating that "[a]djudication on the basis of 'insufficient duration,' . . . indicates that a claim *which would have been allowed* must instead be denied because the claimant's impairment was not or will not be disabling for at least [twelve] months."  1982 WL 31376, *3 (emphasis added).

Plaintiff further argues that the ALJ erred in failing to develop the record given the durational requirement because the evidence was ambiguous and/or inadequate regarding the duration.  Additionally, Plaintiff contends that prior to denying disability based on the 2019 episode of congestive heart failure, the ALJ was required to demonstrate that he would experience a "restoration of function" regarding any limitations associated with his cardiovascular impairments, which the ALJ did not and could not do based on the record before him.[23]

Social Security Ruling 82-52 indeed provides that prior to denying a disability based on "insufficient duration," the ALJ is required to "state clearly in the denial rationale:"

> Within [twelve] months of onset, there was or is expected to be sufficient restoration of function so that there is or will be no significant limitation of the ability to perform

---

[22] The Commissioner includes a number of additional *post-hoc* citations to the record in support of the argument that there was no evidence that Plaintiff's 2019 condition would last twelve months. *See* Def. Cross-Mot. for Summ. J. at 22-23.  However, these reasons were not cited by the ALJ and cannot properly be considered here. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (stating that the court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

[23] The Commissioner did not respond to these arguments.

basic work-related functions. (See SSR 82-55 (PPS-84: Medical Impairments That Are Not Severe)); or

Within [twelve] months of onset, there was or is expected to be sufficient restoration of function so that in spite of significant remaining limitations the individual should be able to do past relevant work or otherwise engage in SGA, considering pertinent vocational factors.

In the latter case, a thorough documentation, evaluation, and rationalization of the claimant's RFC, work history, and vocational potential will be necessary.

SSR 82-52, 1982 WL 31376, at *2.

The ALJ here made no findings here regarding whether there "was or is expected to be sufficient restoration of [Plaintiff's] function" following the 2019 heart failure. As noted, the records upon which the ALJ based his decision spanned only through December 24, 2019, and did not include any information regarding Plaintiff's prognosis. *See* A.R. 1029-13, 1270, 1306-15. Given Plaintiff's testimony and the medical evidence regarding the 2019 heart failure, the ALJ had a duty to further develop the record regarding both the likelihood of "restoration of function" following Plaintiff's 2019 congestive heart failure and the expected duration of any related limitations, which he did not do. *See Tonapetyan*, 242 F.3d at 1150; SSR 82-52, 1982 WL 31376, *2 (noting that "the therapeutic history, and the prescribed treatment will serve as the basis for determining whether the impairment is expected to result in death or will continue to [last for the] additional number of months needed to make up the required [twelve] months duration (e.g., seven months for the claim being adjudicated in the fifth month, etc.)").

The ALJ's failure to develop the record on this issue cannot be considered harmless because the ALJ subsequently failed to consider the limitations posed by Plaintiff's 2019 congestive heart failure at step four of the analysis. *See McGuire*, 2021 WL 5861284, at *1; *Tadesse*, 2021 WL 5600149, at *1; *see also* SSR 82-52, 1982 WL 31376, *4 (disability claim should be denied at steps four or five – i.e., "on the basis of ability to engage in past or other work" – rather than "[on] the basis of insufficient duration" – in part, where claimant has a severe impairment(s) that may last for a continuous period of 12 months or more but impairment(s) still "is not expected to preclude [all substantial gainful activity]."). Instead, at step four, the ALJ

United States District Court
Northern District of California

utilized the same reasoning that he advanced at step two in discounting Plaintiff's symptom testimony and any limitations regarding Plaintiff's 2019 congestive heart failure – "lack of durational information."  A.R. 35.

Moreover, the ALJ's credibility determination regarding Plaintiff's testimony as to the symptoms of his 2019 congestive heart failure was not supported by substantial evidence because the ALJ again relied on the durational requirement in rejecting Plaintiff's symptom testimony.  *See* A.R. 35 (rejecting Plaintiff's symptom testimony based on "the objective medical evidence and other evidence for the reasons explained below"); *see* A.R. 35 (explaining that "the evidence at this time does not support congestive heart failure as a severe impairment due to the lack of durational information").  The ALJ's rejection of Plaintiff's testimony further lacked the requisite specificity because he did not clarify *which* congestive heart failure symptom testimony he was rejecting.  *See Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

For the above reasons, the ALJ erred at step two of the sequential analysis when he failed to develop the record further regarding the likely duration of the limitations posed by Plaintiff's 2019 congestive heart failure and the likelihood of "restoration of function," as required by Social Security Ruling 82-52.  *See* 1982 WL 31376, at *2.  The ALJ also erred at step four when he rejected Plaintiff's symptom testimony and failed to consider how Plaintiff's 2019 congestive heart failure impacted his RFC.

On remand, the ALJ should further develop the record regarding:  (1) how and whether Plaintiff's 2019 congestive heart failure "significantly limits [or limited]" his ability to conduct "basic work activities," 20 C.F.R. § 404.1522(a); (2) the duration of any limitations; (3) whether Plaintiff's function has been restored or is likely to be restored; and (4) how Plaintiff's 2019 heart failure impacts or impacted his RFC.  The ALJ should include the analysis required by Social Security Ruling 82-52 regarding any "restoration of function."  *See* 1982 WL 31376, at *2.

In making the above findings on remand, the court notes that the ALJ should consider both the objective medical evidence and Plaintiff's testimony regarding the subjective symptoms

United States District Court
Northern District of California

1    caused by his 2019 congestive heart failure.  *See Smolen*, 80 F.3d at 1290.  To the extent the ALJ

2    again discounts Plaintiff's congestive heart failure symptom testimony on remand, the ALJ is

3    required to state "specific, clear and convincing" reasons for doing so – apart from the durational

4    requirement.  *See Burrell*, 775 F.3d at 1136.

5    **V.    CONCLUSION AND DISPOSITION**

6         The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's

7    decision "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *see also*

8    *Garrison*, 759 F.3d at 1019.  "[W]here the record has been developed fully and further

9    administrative proceedings would serve no useful purpose, the district court should remand for an

10   immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  However,

11   "[r]emand for further proceedings is appropriate where there are outstanding issues that must be

12   resolved before a disability determination can be made, and it is not clear from the record that the

13   ALJ would be required to find the claimant disabled if all the evidence were properly evaluated."

14   *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted).

15        Because it is not clear from the record that the ALJ would be required to find Plaintiff

16   disabled if all the evidence were properly evaluated, remand is appropriate.  On remand, the ALJ

17   must properly evaluate the issues discussed above based on the applicable law and guidance

18   provided in this opinion.

19        For the foregoing reasons, the court grants in part and denies in part Plaintiff's motion for

20   summary judgment, denies Defendant's cross-motion for summary judgment, and remands this

21   case for further proceedings.

22        **IT IS SO ORDERED.**

23   Dated: June 21, 2022

24   _____
                                    Donna M. Ryu
25                                  United States Magistrate Judge

26

27

28

43